IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

**UNITED STATES OF AMERICA**                                                              **PLAINTIFF**

**V.**                              **CASE NO. 5:20-CR-50021-001**

**JONATHAN TERRY**                                                                         **DEFENDANT**

### OPINION AND ORDER

This matter is before the Court on Defendant Jonathan Terry's Motion to Reconsider Detention Status (Doc. 64). The Government has filed a Response (Doc. 65). The Court finds that the matter is suitable for determination without a hearing and is submitted on the papers.[1] For the reasons set forth below, the Motion is **DENIED**.

### I. BACKGROUND

Mr. Terry is charged with one count of Conspiracy to Commit Bank Fraud in violation of 18 U.S.C. § 1349; seven counts of aiding and abetting Bank Fraud in violation of 18 U.S.C. §§ 1344(2) and § 2; one count of Money Laundering in violation of 18 U.S.C. § 1957(a) and (b); one count of Mail Theft in violation of 18 U.S.C. § 1708; and one count of aiding and abetting Mail Theft in violation of 18 U.S.C. § 1708 and § 2 (Doc. 12). At his initial appearance on February 10, 2020, Mr. Terry waived detention issues and was detained (Doc. 11). Then, on March 30, 2020, Mr. Terry filed a motion for reconsideration of his detention status, arguing that the COVID-19 pandemic and his underlying medical issues justified his release (Doc. 43). The Government responded

---

[1] Other district courts have found that motions for pretrial release based upon the COVID-19 pandemic may be decided on the papers without a hearing. *See, e.g., United States v. Dodd*, 2020 WL 1547419, at *2 (D. Minn. Apr. 1, 2020) (deciding motion for reconsideration of detention without a new hearing); *United States v. Lee*, 2020 WL 1541049, at *4 (D. D.C. Mar. 30, 2020) (same).

1

and entered into the record a considerable number of emails sent by Mr. Terry during his incarceration to friends and family (Doc. 52). Before a hearing on Mr. Terry's first motion for reconsideration, a Pretrial Services Officer interviewed Mr. Terry and issued a report recommending detention, finding that Mr. Terry presented a risk of non-appearance and a danger to the community (Doc. 51). After a hearing on the matter, the Chief United States Magistrate Judge Erin Wiedemann denied Mr. Terry's first motion for reconsideration (Doc. 57).

In his present Motion, Mr. Terry asks to be released on home arrest to his residence in Lowell, Arkansas, where he would self-quarantine (Doc. 64, p. 8). Mr. Terry asserts that the facility where he is housed, the Washington County Detention Center ("WCDC"), has reported 16 positive cases of COVID-19 as of June 18, 2020. *Id.* at 2. At the time of Mr. Terry's first motion for reconsideration, there were no reported cases of COVID-19 in the WCDC. Additionally, Mr. Terry has now submitted medical records showing that: (1) he suffers from Hepatitis C; (2) he underwent heart ablation surgery as a teenager; and (3) he previously suffered from an antibiotic-resistant infection (Doc. 64-1). Mr. Terry asserts that, because of his medical history and underlying conditions, he is at an increased risk of severe symptoms or death if he becomes infected (Doc. 64, p. 3). Thus, Mr. Terry seeks reconsideration of his detention status. In considering this Motion, the Court has also reviewed the Government's response to Mr. Terry's first motion for reconsideration and the Pretrial Services report (Docs. 51 & 52).

## II. DISCUSSION

The Bail Reform Act permits a defendant to be released pending trial on personal recognizance or subject to a condition or combination of conditions that will reasonably

assure the defendant appears for trial and the safety of the community. 18 U.S.C. § 3142(a)(1). If the government proves by clear and convincing evidence that no release condition or set of conditions would reasonably assure the safety of the community, and by a preponderance of the evidence that no release condition or set of conditions would reasonably assure the defendant's appearance at trial, the defendant must be detained pending trial. *U.S. v. Orta,* 760 F.2d 887, 891 (8th Cir.1985). The Court must consider the following factors to determine whether there are conditions of release that will reasonably assure the appearance of the defendant and the safety of the community: "(1) the nature and circumstances of the offense charged"; "(2) the weight of the evidence against the person"; "(3) the history and characteristics of the person"; and "(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g). Even if a defendant is ordered detained until trial, section 3142(f) permits the reopening of a pretrial detention hearing

> if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community.

18 U.S.C. § 3142(f). Mr. Terry does not state which statute his Motion is brought under, so the Court assumes that Mr. Terry's Motion is brought under 18 U.S.C. § 3142(f).[2]

The Court "understands the gravity of the COVID-19 pandemic and is mindful of

---

[2] Mr. Terry has not invoked Section 3142(i), which allows for temporary release to third-party custodians for a "compelling reason." Courts have used this provision during the current pandemic when ordering the release of pretrial and presentencing defendants in federal court. *See United States v. Ramirez-Rodriguez,* 2020 WL 1847576, at *5 (D. Minn. Apr. 13, 2020) (listing cases). In his present Motion, however, Mr. Terry has not proposed a third-party custodian, so he does not—at present—qualify for release under Section 3142(i).

the unprecedented circumstances it presents for both society at large and for the prison system." *United States v. Morris*, 2020 WL 1471683, at *3 (D. Minn. Mar. 26, 2020); *see also, e.g., United States v. Clark*, 2020 WL 1446895, at *3 (D. Kan. Mar. 25, 2020) ("The court is mindful of the unprecedented magnitude of the COVID-19 pandemic and the extremely serious health risks it presents."). The Court does not doubt the genuineness of Mr. Terry's health conditions or his concerns about his safety. The Court notes, however, that "[t]he risk of harm *to the defendant* does not usually bear on [§ 3142(f)'s] analysis." *Clark*, 2020 WL 1446895, at *3 (emphasis added).

Courts have differed on whether the COVID-19 pandemic is a "material change of circumstances" that warrants a renewed evaluation of a prior detention order under § 3142(f). *Compare United States v. Banks*, 2020 WL 1450549 (D. Neb. Mar. 25, 2020) ("I am not convinced the COVID-19 pandemic is a 'material change of circumstances' warranting a renewed evaluation of my prior detention order."), *with United States v. Martin*, 2020 WL 1274857, at *2 (D. Md. Mar. 17, 2020) (stating that the COVID-19 pandemic "can indeed constitute new information having a material bearing on whether there are conditions of release that will reasonably assure the appearance of detained defendants and secure the safety of the community"). In this Court's opinion, the more persuasive position is that the COVID-19 pandemic *may* constitute a material change of circumstances that justifies renewed evaluation of a detention order, as the pandemic may relate to the detainee's "physical and mental condition" under § 3142(g)(3)(A).

Additionally, there is no dispute that Mr. Terry suffers from Hepatitis C, and the Centers for Disease Control and Prevention state that individuals with Hepatitis C may be at higher risk for severe illness from COVID-19. *What to Know about Liver Disease and*

4

*COVID-19*, Ctrs. for Disease Control & Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/liver-disease.html (last accessed June 22, 2020) ("[P]eople of any age who have serious underlying medical conditions, including people with liver disease, may be at higher risk for severe illness from COVID-19 . . . ."). Thus, the Court concedes that Mr. Terry's medical conditions in light of the COVID-19 pandemic do weigh somewhat in favor of pretrial release.

Still, Mr. Terry's medical conditions do not address § 3142(f)'s primary purpose, namely, whether he poses a flight risk or danger to the community. *See* 18 U.S.C. §§ 3142(f), (g)(4). The Pretrial Services Report shows that Mr. Terry has multiple charges and convictions for Failure to Appear. Mr. Terry also has two pending charges for Fleeing and Fleeing-on-Foot; these charges arose while Mr. Terry had absconded from parole on his most recent state sentence with the Arkansas Department of Correction. Further, according to the Pretrial Services Report, during the investigation of the instant offense, Mr. Terry fled on foot from a vehicle after he was pulled over, and, on a separate occasion, he tried to sneak out of an apartment window to evade the police. Finally, while incarcerated, Mr. Terry sent an email to his mother that appears to direct her to arrange his escape to Mexico (Doc. 52-4). Mr. Terry's past behavior makes it clear that he is a flight risk, and the Court is not persuaded that location monitoring would be sufficient to deter him from future flight. Thus, by a preponderance of the evidence, the Court finds that Mr. Terry poses a flight risk and that no combination of conditions of release would assure his presence at trial.

Additionally, the clear and convincing record evidence shows that there is no combination of conditions of release that would reasonably assure the safety of the

community from Mr. Terry. As illustrated by emails sent by Mr. Terry via the WCDC's email system, Mr. Terry has a penchant for sending threatening emails in "all caps" about those who he believes have wronged him. See, e.g., Doc. 52-6 ("WHEN I SEE THAT B***H WATCH ME HIT HER RIGHT IN THE F*****G MOUTH"); Doc. 52-8 ("ASK HER ABOUT [R.S.] THE ONE WHO BET [sic] HER ASS AT [B.S.][') WHEN I HAD HER MOTHERF*****G ASS WHOOPPED [sic] IT[']S GOING TO BE EPIC SEE IF THE RESST [sic] OF HER TEETH ET [sic] KNOCKED OUT"). Of particular concern is the fact that Mr. Terry sent such sent such threatening emails over the WCDC's email system. This gives the Court pause: If Mr. Terry cannot be deterred from making threats when detection is certain, the Court has little faith that he can be deterred from making or carrying out threats if he is released. In other words, the Court finds by clear and convincing evidence that there are no conditions of release that might reasonably assure the safety of the community from Mr. Terry.

For all of the reasons stated above, by a preponderance of the evidence, the Court finds that Mr. Terry poses a flight risk and that no combination of conditions of release would assure his presence at trial. Further, the Court finds by clear and convincing evidence that he must continue to be detained for the protection of the community.

### III. CONCLUSION

Accordingly, Mr. Terry's Motion to Reconsider Detention Status (Doc. 64) is **DENIED.**

**IT IS SO ORDERED** on this 23rd day of June, 2020.

_____
TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE